# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 20, 2008 Session

## STATE OF TENNESSEE v. JOSE NOE GUTIERREZ

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-807     Mark J. Fishburn, Judge**

_____

**No. M2007-02064-CCA-R9-CO - Filed March 25, 2009**

_____

JOHN EVERETT WILLIAMS, J., dissenting.

My colleagues and the trial court determined that Detective Corcoran was without probable cause to believe that the defendant was involved in the murder of Emma Fuller, that taking the defendant into custody violated his Fourth Amendment rights, and that the defendant's subsequent confession acknowledging his involvement in the murder should be suppressed. I agree with the relevant law cited by the majority and recognize that probable cause must have been established at the time of the defendant's arrest. I simply disagree with the majority's conclusion that probable cause was not established on the facts known to Detective Corcoran.

The facts relevant to my determination that Detective Corcoran had probable cause to arrest the defendant and that his subsequent confession should not be suppressed are as follows:

1) Detective Corcoran was a twenty-one-year veteran of the Metro Nashville Police Department.

2) Detective Corcoran had personal knowledge that Emma Fuller was murdered.

3) Detective Corcoran had reliable information that the last known persons to see the victim alive were two male Hispanics.

4) The two male Hispanics were described as between five feet-three inches and five feet-nine inches tall, young, and slender. One male's hair was shaved on the sides and longer on the top, and he was wearing black jeans and a black tank top. The other male was shorter, heavier, and was wearing a white shirt and a ball cap. They were last seen walking south on Antioch Pike with three other male Hispanics.

5) The two male Hispanics who left the restroom joined their associates (three other male Hispanics) who were waiting outside the washette beside a red van.

6) All five male Hispanics entered the red van and, moments later, exited and walked away from the washette.

7) The red van could have been taken by the suspects to leave the scene if not for a broken key in the ignition that rendered the van inoperable.

8) The van was registered in the name of the defendant.

9) Detective Corcoran learned, through reliable information, the name of the owner of the red van, that he lived within two miles of the murder scene, and where he worked.

10) The detective could personally identify the defendant as the person he saw on the security tape from the bar and the security video disk from the gas station, which showed the five male Hispanics leaving the washette and walking toward the defendant's home.

The majority does not question the trial court's finding that Detective Corcoran lacked credibility when he testified he could make an identification of the defendant from viewing the security tape from the bar or the security disk from the gas station. If, in fact, Detective Corcoran could identify the defendant as one of the persons he saw on the security tape or disk, then I believe there is no question that he had probable cause to arrest the defendant, as the detective now had conclusive proof that the defendant was, in fact, at the scene of the murder.

With regard to the credibility finding, I think it is important to note that the trial court appears to have viewed the security tape and disk after the hearing and without assistance from the State or the defense. From my viewing of the record, it seems clear that Detective Corcoran, a twenty-one-year veteran of the Metro Nashville Police Department, testified under oath that he could identify the defendant as one of the persons on the security tape or disk and that, while the gas station disk was clearer, he could have made an identification from either the security tape or disk. At the hearing, defense counsel did not contest the detective's ability to make such an identification.

Neither the trial court, the majority, or I can make any type of identification from viewing the security tape or disk. This perhaps provides the major reason the majority is reluctant to disagree with the trial court's findings. However, I am convinced that I am not viewing the security tape or disk under the same conditions in which it was viewed by Detective Corcoran and feel compelled to voice my concern. First, I have not and cannot review the security tape from the bar because I have no equipment available with which to review it. Second, the security disk from the gas station has two scenes which would play on my laptop computer. One scene shows a school bus leaving the gas station; a man pulling up to the gas pumps and pumping gas to completion, then leaving the

gas station; five people walking from across the street and through the station lot; and another car pulling in and out of the station. All of this occurs in less than four seconds on my computer. The other scene shows five people walking across the street in less than one second. It is as though everything is one hundred times faster than its actual speed. I am unable to slow the images down. I would agree that, if Detective Corcoran saw what I saw, he could not have made any kind of identification and the security disk would, in my opinion, be worthless. But testimony was given that the system at the gas station was state of the art. With this in mind, and knowing that digital security devices are designed to allow for multiple views and probable enhancements, I feel I am unable to make a decision concerning the detective's credibility without viewing the security tape or disk on the same type of equipment used by the detective, which I do not have at my disposal.

I would propose the State be required to provide this court, within thirty days, with access to the same type of equipment that Detective Corcoran used and be informed whether he viewed stills, slow-motion, or enhancements of any kind in order that we may assess the likelihood of an identification.

Further, I differ from the majority in one other aspect of their opinion as it relates to the relevant weight placed upon the red van left at the scene of the murder to provide probable cause to arrest its owner. I see the abandoned red van as providing the detective with the best possible lead to solving this case and akin to leaving a calling card. A reasonable detective, upon determining that the probable murderers were connected to the red van in such a manner as to try to leave the scene in it would surely have probable cause to believe that the owner of the van was involved in the murder and possessed information that would lead to the arrest of the true killer or killers. Here, however, Detective Corcoran had even more reliable information about the owner of the van. The owner lived within two miles of the murder scene. When the probable killers exited the van after breaking the key off in the ignition, rendering the van incapacitated, they proceeded in the direction of the defendant's home. The owner was Hispanic, the same ethnicity as the men witnesses had described as being involved. From all of the above, I would conclude the detective had probable cause to arrest the defendant at the restaurant. Thus, his subsequent confession was lawful.

_____
**JOHN EVERETT WILLIAMS, JUDGE**